**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Bahig Saliba,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>American Airlines Incorporated,<br><br>　　　　　　Defendant. | No. CV-23-00140-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss. (Doc. 18). For the following reasons, the Motion will be granted.

**I.      BACKGROUND**

On January 23, 2023, pro se Plaintiff Bahig Saliba, an airline pilot, initiated this action against his employer, Defendant American Airlines Inc. (Doc. 1). In the operative Second Amended Complaint ("SAC"), Plaintiff alleges a single count for breach of contract. (Doc. 17). Defendant moves to dismiss the SAC for failure to state a claim. (Doc. 18).

In March 2005, Plaintiff and America West Airlines ("AWA"), his employer at the time, executed a Settlement Agreement resolving his employment discrimination lawsuit against the company. (Doc. 17-2 at 9–13). Relevant to the instant matter, subheading (d) of the "Consideration" provision reads in part:

> AWA will deliver to [Plaintiff] a letter regarding AWA's policy against non-discrimination. The letter is not subject to the confidentiality provision . . . . The letter will be signed by

> the Vice President of Flight Operations, Chief Pilot, and Director of Legal Affairs, and will contain the following language:
>
>> . . . By this letter, we confirm [AWA]'s long-standing policy against discrimination on account of national origin or race in any aspect of employment . . . . Indeed, it is the policy of [AWA] not to tolerate unlawful discrimination in any form, and we fully support that policy.
>>
>> If you feel that you are the victim of unlawful discrimination in the future, or if you feel that any other employees are experiencing unlawful discrimination, we encourage you to report your concerns to the Human Resources department or to me directly. We assure you that [AWA] will investigate your concerns and take any appropriate corrective measures. Further, you will not be punished in any way for merely bringing any such concerns to our attention.

(Doc. 17-2 at 10). On March 9, 2005, AWA delivered Plaintiff a letter as provided in the Settlement Agreement (the "Letter"). (Doc. 17-2 at 8). AWA later merged with Defendant, and the Settlement Agreement provides that it is "binding upon AWA and its successors and assigns." (Doc. 17-2 at 12; Doc. 18 at 2).

On January 6, 2022, Plaintiff was the subject of a disciplinary hearing "as a result of a disagreement related to" the mask policy that Defendant implemented during the COVID-19 pandemic.[1] (Doc. 17 at 4). Plaintiff alleges that other pilots outside the conference room where the hearing was held were not wearing masks as required by Defendant's policy but were not disciplined in any way, even after he raised the issue to managers and a human resources representative. (Doc. 17 at 4). Plaintiff further asserts

---

[1] That "disagreement" was central to a previous case brought by Plaintiff against Defendant and others that included claims for breach of his employment contract, hostile work environment, violation of the Fourteenth Amendment, violation of aviation law, defamation, and violation of a collective bargaining agreement—all of which were dismissed by this Court. *See Saliba v. Am. Airlines Inc. et al.*, No. 2:22-cv-00738-SPL (D. Ariz.). Plaintiff has also brought three other lawsuits in this District involving Defendant's mask policy, his noncompliance, and subsequent events—all of which have been dismissed. *See Saliba v. Allied Pilots Ass'n*, No. 2:22-cv-01025-DLR (D. Ariz.); *Saliba v. Pekoske et al.*, No. 2:22-cv-00587-MTL (D. Ariz.); *Saliba v. Spokane Int'l Airport et al.*, No. 2:22-cv-00543-JJT (D. Ariz.). However, this is the first time Plaintiff has brought a breach of contract claim based on the 2005 Settlement Agreement.

that he was discriminatorily denied the opportunity to apply for a chief pilot position in March 2022. (Doc. 17 at 4–5). On April 14, 2022, Plaintiff notified his manager and human resources employees via email that he believed he was being discriminated against by Defendant. (Doc. 17 at 5). Plaintiff alleges that Defendant did not conduct any investigation or otherwise contact Plaintiff about his concerns, instead demanding that Plaintiff undergo a fitness-for-duty examination and eventually placing him on administrative leave without pay. (Doc. 17 at 5).

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). A pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## III.   DISCUSSION

The SAC alleges one count, breach of contract. To state a breach of contract claim under Arizona law, "a plaintiff must allege that (1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel. County of Maricopa*, 318 P.3d 419, 435 (Ariz. Ct. App. 2014). Here, Plaintiff claims that Defendant breached the Settlement Agreement "by not conducting a prompt and timely investigation . . . in response to the Plaintiff's complaint and by retaliating and punishing the Plaintiff." (Doc. 17 at 6). Defendant's Motion argues that no contractual provision requires Defendant to take such action.

Arizona courts "construe contracts to give effect to the parties' intent, applying the plain contractual language when it is unambiguous." *Standard Constr. Co. Inc. v. State*, 473 P.3d 344, 347 (Ariz. Ct. App. 2020). Here, according to the unambiguous terms of the Settlement Agreement, AWA was obligated to deliver the Letter containing certain language, but compliance with that language is not itself a requirement of the Settlement Agreement. In other words, the Settlement Agreement plainly required the Letter to contain specified language, but that language does not create any contractual obligations. If the parties had intended otherwise, the Court would expect to see any such obligations specifically delineated in a manner akin to the separate sub-provisions that set forth AWA's obligations to deliver a check, to purge Plaintiff's personnel file of certain documentation, and to deliver the Letter. (Doc. 17-2 at 9–10). Moreover, the Settlement Agreement describes the Letter as "a letter regarding AWA's policy against non-discrimination," suggesting that the language of the Letter was not intended to create any obligations for AWA but instead merely to reiterate its existing nondiscrimination policy.[2] (Doc. 17-2 at 10). As Defendant acknowledges, it has obligations to handle complaints of discrimination in accordance with federal and state law, but those obligations do not arise from the Settlement Agreement, nor does the Settlement Agreement create any additional obligations with respect to complaints of discrimination. (Doc. 18 at 6 n.8). According to the plain language of the Settlement Agreement, AWA was required to deliver the Letter to Plaintiff, which it undisputedly did—thereby fulfilling its obligation under that provision.

To the extent Plaintiff argues that the Letter itself is a contract, that argument fails. The formation of a valid contract requires "an offer, acceptance of the offer, and

---

[2] Plaintiff suggests that this interpretation of the Settlement Agreement renders the Letter "meaningless." (Doc. 20 at 10). While this Court's role is merely to enforce the unambiguous language of the Settlement Agreement regardless of the perceived quality of the bargain, *see Zambrano v. M & RC II LLC*, 517 P.3d 1168, 1173 (Ariz. 2022), the Letter did have value in that it was not subject to the Settlement Agreement's confidentiality provision—a provision which, as Defendant notes, Plaintiff appears to have breached by publicly filing the Settlement Agreement. (Doc. 18 at 7 n.9).

consideration." *Goodman v. Physical Res. Eng'g, Inc.*, 270 P.3d 852, 855 (Ariz. Ct. App. 2011). "Adequate consideration consists of a benefit to the promisor and a detriment to the promisee." *Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986). Even if AWA made an offer to Plaintiff in the Letter, there is no indication of acceptance. More importantly, AWA received no benefit in return, and Plaintiff suffered no detriment. Accordingly, the Letter does not constitute a valid contract. All told, the SAC does not identify a breach of any contract term and therefore fails to state a breach of contract claim.

## IV.     CONCLUSION

The SAC will be dismissed for failure to state a claim. "A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted). Here, Plaintiff alleges breach of contract terms that simply do not exist, so his claim cannot possibly be cured by amendment. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 18) is **granted**. The SAC is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate** this action.

Dated this 6th day of July, 2023.

Honorable Steven P. Logan
United States District Judge

5